IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BLUE TEE CORP. and GOLD FIELDS MINING, INC.**,

Plaintiffs,

v.                                                                                         No. 13-0830-DRH

**XTRA INTERMODEL, INC.,
X-L-CO, INC., XTRA COMPANIES
INC., XTRA CORPORATION and
XTRA LLC.**

**Defendants.**

**MEMORANDUM and ORDER**

**HERNDON, Chief Judge:**

I. **Introduction and Background**

Pending before the Court is defendants' XTRA Corporation, XTRA Companies, Inc., and XTRA LLC's combined motion to dismiss plaintiffs' second amended complaint and memorandum in support thereof (Doc. 48). Defendants argue plaintiffs' allegations that XTRA Corp. and/or XTRA LLC are liable merely because their subsidiaries owned and operated the Site and their conclusory assertions of vicarious liability for XTRA Corp.'s subsidiaries' alleged actions are

insufficient to state a claim for which relief can be granted as a matter of law. Plaintiffs oppose the motion (Doc. 62). Defendants filed a reply brief (Doc. 66). Based on the applicable law and the following, the Court denies the motion.

On August 13, 2013, plaintiffs, Blue Tee Corp. ("Blue Tee") filed a five count complaint against XTRA Intermodal, Inc. ("XTRA Intermodal"), X-L-CO., Inc. ("X-L"), XTRA Corporation ("XTRA Corp."), and XTRA LLC, pursuant to Sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended (Doc. 2). The complaint seeks recovery costs and contribution costs incurred or to be incurred by Blue Tee in performing response, investigation and remedial activities at the Old American Zinc Plant site ("Site") in Fairmont City, Illinois (Doc. 2). Plaintiff alleges that remediation of the Site has cost it more than $4 million and future costs are anticipated to exceed $11 million. Blue Tee sued what it believes to be "shell" corporations bearing some form of the "XTRA" name in addition to XTRA Corp. which it asserts is a wholly owned subsidiary of Berkshire Hathaway, Inc.

On November 14, 2013, Blue Tee filed an amended complaint adding two parties, plaintiff Gold Fields Mining, LLC, and defendant XTRA Companies, Inc. ("XTRA Companies") (Doc. 39). In response, defendants filed the pending motion to dismiss (Doc. 48). Subsequently, on February 12, 2014, Magistrate Judge Donald G. Wilkerson granted plaintiffs leave to file a second amended complaint (Doc. 67). In that Order, Magistrate Judge Wilkerson noted that the filing of the second amended complaint would not render moot the pending motion to dismiss.

On February 13, 2014, plaintiffs filed their second amended complaint (Doc. 69). Count I is against XTRA Intermodal and X-L for cost recovery pursuant to § 107(a) – response costs incurred; Count II is against XTRA Intermodal and X-L for contribution; Count III is against XTRA Intermodal and X-L for declaratory judgment; Count IV is against XTRA Intermodal and X-L for statutory and equitable subrogation; Count V is against XTRA Corp. and XTRA LLC for cost recovery, contribution and declaratory judgment – response costs incurred and Count VI is against XTRA Corp. and XTRA Companies to pierce the corporate veil.

The following allegations are taken from the second amended complaint. Blue Tee is the successor in interest to American Zinc Company of Illinois ("American Zinc"). American Zinc owned the Site from 1916 to 1979. American Zinc operated the Site as a zinc smelter from 1916 to 1953. American Zinc consolidated the slag or "clinker" in piles on the Site.

In 1976, defendant X-L executed a lease with American Zinc for use of the property as a truck terminal. In 1979, X-L purchased the property. Following the purchase of the property, defendant XTRA Intermodal expanded its operations and X-L transferred its ownership of the property to XTRA Intermodal in 1995. Thereafter, XTRA Intermodal ground up the stockpiled slag and clinker and distributed it throughout the Site. XTRA Intermodal's grinding and spreading of slag throughout the Site resulted in blowing dust, created a nuisance, contaminated neighboring properties and aggravated the contamination of the Site.

In 1994 and 1995, the United States Environmental Protection Agency

("EPA") and the Illinois Environmental Protection Agency ("IEPA") began to investigate the Site. The EPA determined that XTRA Intermodal had exacerbated conditions at the Site and issued a Unilateral Administrative Order ("UAO") to XTRA Intermodal directing it to participate and cooperate in the Remedial Investigation and Feasibility Study ("RI/FS"). XTRA Intermodal violated the UAO by failing to participate and cooperate in the RI/FS process or by failing to make a good faith offer to contribute to the costs of the RI/FS. Most of the material to be consolidated on Site for the final remedy consists of about 893,000 cubic yards of ground slag, which resulted from XTRA Intermodal's actions. Blue Tee has made repeated demands upon XTRA Intermodal to participate in or contribute to the costs of remediation but XTRA Intermodal has failed and refused to contribute.

Plaintiff Gold Fields paid the costs incurred by Blue Tee for remediation at the Site and seeks recovery pursuant to its subrogation rights under CERCLA, Illinois law, and contract law as it may sue in Blue Tee's name pursuant to their agreement.

As the motion to dismiss is ripe, the Court turns to address the merits of the motion.

## II. Motion to Dismiss Standard

A Rule 12(b)(6) motion tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). In reviewing a motion to dismiss, the Court takes as true all factual allegations in plaintiffs' complaint and draws all reasonable

inferences in their favor. *See Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."

To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O. C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 563.

Plaintiffs' claims "must be plausible on its face," that is, "The complaint must establish a nonnegligible probability that the claim is valid." *Smith v. Med. Benefit Admin'rs. Group, Inc.*, 639 F.3d 277, 281 (7th Cir. 2011). With these principles in mind, the Court turns to the allegations of the second amended complaint.

### III.   Analysis

Defendants XTRA Corp., XTRA Companies, and XTRA LLC argue that Count V against XTRA Corp. and XTRA LLC (Cost Recovery, Contribution and Declaratory Judgment- Response Costs Incurred) and VI against XTRA Corp. and XTRA Companies (Corporate Veil Piercing) should be dismissed. Specifically, defendants maintain that the second amended complaint is devoid of any non-conclusory allegations in support of their claims.

**Count V**

As to Count V, defendants argue that plaintiffs have asserted no plausible allegations to support their conclusory allegation that XTRA Corp. or XTRA LLC was a site operator under CERCLA Section 107.[1] Plaintiffs reject defendants' assertions.

Two CERCLA sections—42 U.S.C. §§ 9607(a) and 9613(f)—afford rights of

---

1 The defendants cite *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) to support their argument that "[t]he Seventh Circuit rejects allegations based exclusively on 'information and belief.'" The Court disagrees with this interpretation of the law. First, B*ankers Trust Co.,* is distinguishable from this case in that it dealt with fraud claims which are not present in this action. Second, pleading "on information and belief" is generally permitted as long as the pleader has a good faith basis for his statement. *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404, 406 (7th Cir. 1945) (allegations based on "information and belief" construed in plaintiff's favor "do substantial justice" under Rule 8(f) (now Rule 8(e)). Further, the Supreme Court did not strike "on information and belief" from the lexicon when it made the pleading rules more demanding. *See Twombly*, 550 U.S. at 551, 554-55.

action to private parties seeking to recover expenses associated with cleaning up contaminated sites. *See United States v. Atl. Research Corp.,* 551 U.S. 128, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007). The purpose of CERCLA is to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts are borne by those responsible for the contamination. *Burlington N. and Santa Fe Ry. Co. v. United States,* 556 U.S. 599, 602, 1289 S.Ct 1870 (2009) (citing *Consol. Edison Co. of N.Y. v. UGI Util., Inc.,* 423 F.3d 90, 94 (2d Cir. 2005)); *Key Tronic Corp. v. United States,* 511 U.S. 809, 819 n. 13, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) ("CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others.").

Responders to situations involving hazardous materials can therefore bring private cost-recovery actions against facility owners responsible for the release of hazardous materials. *Id.* In order to succeed in an action for recovery of response costs under CERCLA, a plaintiff must prove the following elements: "(1) the site in question is a 'facility' as defined by CERCLA; (2) the defendant is a 'responsible person' for the spill as defined by CERCLA; (3) there was a release of hazardous substances; and (4) such release caused the Plaintiff to incur response costs." *Envtl. Transp. Sys., Inc., v. ENSCO, Inc.,* 969 F.2d 503, 506 (7th Cir.1992).

CERCLA shifts the costs of cleanup to the parties responsible for the contamination. "[L]iability under [CERCLA] is strict, joint and several. In other words, … the [government] may recover its costs in full from any responsible party,

regardless of that party's relative fault." *Metro. Water Reclamation Dist. of Greater Chicago v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 27 (7th Cir. 2007). Liability is imposed when a party is found to have a statutorily defined 'connection' with the facility; that connection makes the party responsible regardless of causation." *United States v. Capital Tax Corp.*, 545 F.3d 525, 530 (7th Cir. 2008) (citation omitted). CERCLA imposes liability for "response costs" on the "owner and operator of a ... facility" from which a hazardous substance has been released. 42 U.S.C. § 9607(a)(1)–(4). *See also Amcast Industrial Corp. v. Detrex Corp.*, 2 F.3d 746, 748 (7th Cir. 1993).

> The Supreme Court has defined "operator" under CERCLA as:
>
> [S]omeone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

*United States v. Bestfoods*, 524 U.S. 51, 56 (1998).

Here, the Court finds that plaintiffs have pled sufficient allegations to assert claims against both XTRA Corp. and XTRA LLC in Count V. Initially, the Court notes that plaintiffs have alleged that XTRA Corp and XTRA LLC, two of the stacked corporations, were responsible for XTRA Intermodal's and X-L's decisions to exacerbate the conditions at the Site and to refuse to participate in the UAO and other remedial measures that the EPA required. According to the second amended complaint, plaintiffs have alleged that XTRA Corp. and XTRA LLC were directly involved in the Site's operations. Specifically, plaintiffs allege: "[p]rior to

2001, XTRA Corp. and XTRA LLC managed and operated X-L and XTRA Intermodal and XTRA Corp. and XTRA LLC made the decisions regarding the environmental operations and obligations at the Site." (Doc. 69, ¶ 84). Further, plaintiffs allege that XTRA Corp. and XTRA LLC "managed, directed and/or conducted the operations at the Site relating to the grinding and spreading of the waste slag at the Site after X-L purchased the Site in 1979." (Doc. 69, ¶ 85). Plaintiffs also allege: "XTRA Corp. and XTRA LLC made decisions regarding environmental compliance at the Site," and "made decisions regarding whether to comply with EPA's requests regarding the investigation, removal and remedial activities at the Site, including, but not limited to, the decision not to comply with the UAO issued to XTRA Intermodal in June 2005." (Doc. 69, ¶¶86 & 87). Clearly, plaintiffs have alleged that these defendants, as parent corporations, exercised control and direction over the Site/facility in question and not just over the subsidiaries as required by *Bestfoods*, 524 U.S. at 68. At this stage in the litigation, the Court finds that these allegations are plausible to state claims against defendants and are sufficient to withstand dismissal.

Next, Defendants argue that since Gold Fields has not alleged that it has incurred any response costs, it cannot bring a claim under Section 107 for cost recovery. Defendants cite *Chubb Custom Inc. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 962 (9th Cir. 2013)("a subrogee – simply by stepping into the shoes of the insured via a reimbursement – cannot be liable for the response costs under CERCLA, and thus cannot itself incur response costs."), in support of its argument

for dismissal. Plaintiffs note that defendants concede that *Chubb* is not binding on this Court, that the Seventh Circuit has not addressed this question and that *Chubb* was not unanimous. Specifically, plaintiffs point out that in the dissent, Judge Gould recognized that a subrogee could bring a section 107 claim on behalf of a subrogor, as the lack of a remedy would "delay cleanups, putting public health and safety at risk and undermining the purpose of CERCLA." *Chubb*, 710 F.3d at 978. Further, plaintiffs maintain that Section 112 recognizes that a payor is subrogated to all rights and causes of actions that a claimant has and because Blue Tee has a Section 107 claim then Gold Fields should be able to bring the Section 107 claim too. At this stage of the litigation and because of the state of the case law on this issue, the Court agrees with plaintiffs and finds that plaintiffs have alleged a cause of action against defendants for a Section 107 claim. Thus, the Court denies dismissal on this basis.

**Count VI**

Similarly, defendants argue that Count VI should be dismissed because it provides only a formulaic and speculative recitation of the elements on nothing more than information and belief and that Count VI fails to allege an injustice will occur. Plaintiffs respond that they have pled facts to support the veiling piercing factors and facts regarding injustice.[2]

Courts in Delaware have cautioned that "[p]ersuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable*

---

2 Defendants' additional argument that plaintiffs fail to state any cause of action against XTRA Companies is moot. As stated previously, Count VI of the second amended complaint is against XTRA Companies and XTRA Corp.

*Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (quotation omitted). There are two routes that a plaintiff can take in urging a court to do so: she can argue for piercing of the corporate veil under an alter ego theory, or she can argue under an agency liability theory. *Trevino v. Merscorp, Inc.*, 583 F.Supp.2d 521, 528–32 (D. Del. 2008). The test to pierce the corporate veil under the alter ego theory is the familiar multi-factor list that examines the degree of control a parent exercises over a subsidiary. The Third Circuit Court of Appeals has boiled Delaware's requirements down to a seven-part test: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the corporation; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. *See United States v. Pisani,* 646 F.2d 83, 88 (3d Cir. 1981); *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,* 842 F.2d 1466, 1476 (3d Cir. 1988).

Reading the second amended complaint in the light most favorable to plaintiffs, the Court concludes that plaintiffs have alleged sufficient facts to maintain causes of action for piercing the corporate veil under the alter ego theory and that plaintiffs adequately pled injustice.

Plaintiffs allege that "XTRA Corp. formed and operated XTRA Intermodal, X-L, XTRA LLC and XTRA Companies as 'shell' corporations with no substantial assets." (Doc. 69, ¶ 96). Further, plaintiffs allege that "XTRA Corp. formed or

maintained X-L, XTRA Intermodal, XTRA LLC and XTRA Companies for the purpose of shielding itself from the resulting environmental liability at the Site." (Doc. 69, ¶ 97). Also, the second amended complaint states: "all financial and business decisions for XTRA Intermodal, X-L, XTRA LLC and XTRA Companies were made by XTRA Corp., not by independent officers or directors of the subsidiary companies." (Doc. 69, ¶ 98). Moreover, the second amended complaint states: "XTRA Intermodal, X-L, XTRA LLC, XTRA Companies and XTRA Corp. operated as a single economic entity and failed to observe the required corporate financial and legal formalities." (Doc. 69, ¶ 99). Lastly, the second amended complaint alleges: '[w]hile XTRA Intermodal, X-L, XTRA LLC and XTRA Companies still exist as shell entities, upon information and belief, they have limited to or no assets from which the liabilities arising from the Site for Blue Tee's response costs can be satisfied." (Doc. 69, ¶ 102). Based on these allegations and at this stage of the litigation, the Court finds that plaintiffs have stated plausible claims for piercing the corporate veil. The second amended complaint adequately puts defendants on notice of the claims against them. Defendants' arguments are better suited at the summary judgment stage after discovery has been completed.

### IV.  Conclusion

Accordingly, the Court **DENIES** defendants XTRA Corporation, XTRA Companies, Inc., and XTRA LLC's combined motion to dismiss plaintiffs' second amended complaint and memorandum in support thereof (Doc. 48).

**IT IS SO ORDERED.**

Signed this 16th day of May, 2014.

Digitally signed by David R. Herndon
Date: 2014.05.16 16:18:46 -05'00'

**Chief Judge
United States District Court**