## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BLUE TEE CORP. and GOLD FIELDS**
**MINING, INC.**,

**Plaintiffs,**

**v.**                                                            **No. 13-0830-DRH**

**XTRA INTERMODEL, INC.,**
**X-L-CO, INC., XTRA COMPANIES**
**INC., XTRA CORPORATION and**
**XTRA LLC.,**

**Defendants.**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I.   Introduction and Background

Pending before the Court is plaintiffs' motion for summary judgment on contribution liability against defendants X-L-Co., Inc. and XTRA Intermodal, Inc. (Doc. 127).   Specifically, plaintiffs maintain that they are entitled to contribution from XTRA Intermodal and X-L-Co. for costs Blue Tee incurred and Gold Fields has paid pursuant to Section 113(f)(1), 42 U.S.C. § 9613(f)(1), of CERCLA, and a declaratory judgment as to contribution liability pursuant to Section 113(f) of CERCLA for costs Blue Tee will incur and Gold Fields will pay to conduct the final

remediation of the Old American Zinc Plant site ("Site") in Fairmont City, Illinois. Defendants oppose the motion acknowledging that they are potentially responsible parties but that a finding of zero liability is warranted (Doc. 143).   Based on the applicable law and the following, the Court denies the motion.

On August 13, 2013, plaintiffs, Blue Tee Corp. ("Blue Tee") filed a five count complaint against XTRA Intermodal, Inc. ("XTRA Intermodal"), X-L-CO., Inc. ("X-L"), XTRA Corporation ("XTRA Corp."), and XTRA LLC, pursuant to Sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended (Doc. 2).   The original complaint sought recovery costs and contribution costs incurred or to be incurred by Blue Tee in performing response, investigation and remedial activities at the Site (Doc. 2).   Plaintiff alleged that remediation of the Site has cost it more than $4 million and future costs are anticipated to exceed $11 million. On November 14, 2013, Blue Tee filed an amended complaint adding two parties, plaintiff Gold Fields Mining, LLC, and defendant XTRA Companies, Inc. ("XTRA Companies") (Doc. 39). On February 13, 2014, plaintiffs filed a second amended complaint (Doc. 69). Count I is against XTRA Intermodal and X-L for cost recovery pursuant to § 107(a) – response costs incurred; Count II is against XTRA Intermodal and X-L for contribution; Count III is against XTRA Intermodal and X-L for declaratory judgment; Count IV is against XTRA Intermodal and X-L for statutory and equitable subrogation; Count V is against XTRA Corp. and XTRA LLC for cost recovery, contribution and declaratory judgment – response costs incurred and Count VI is

against XTRA Corp. and XTRA Companies to pierce the corporate veil.

The following allegations are taken from the second amended complaint. Blue Tee is the successor in interest to American Zinc Company of Illinois ("American Zinc").   American Zinc owned the Site from 1916 to 1979.   American Zinc operated the Site as a zinc smelter from 1916 to 1953.   American Zinc consolidated the slag or "clinker" in piles on the Site.

In 1976, defendant X-L executed a lease with American Zinc for use of the property as a truck terminal.   In 1979, X-L purchased the property.   Following the purchase of the property, defendant XTRA Intermodal expanded its operations and X-L transferred its ownership of the property to XTRA Intermodal in 1995. Thereafter, XTRA Intermodal ground up the stockpiled slag and clinker and distributed it throughout the Site. XTRA Intermodal's grinding and spreading of slag throughout the Site resulted in blowing dust, created a nuisance, contaminated neighboring properties and aggravated the contamination of the Site.

In 1994 and 1995, the United States Environmental Protection Agency ("EPA") and the Illinois Environmental Protection Agency ("IEPA") began to investigate the Site.   The EPA determined that XTRA Intermodal had exacerbated conditions at the Site and issued a Unilateral Administrative Order ("UAO") to XTRA Intermodal directing it to participate and cooperate in the Remedial Investigation and Feasibility Study ("RI/FS").   XTRA Intermodal violated the UAO by failing to participate and cooperate in the RI/FS process or by failing to make a good faith offer to contribute to the costs of the RI/FS.   Most of the material to be

consolidated on Site for the final remedy consists of about 893,000 cubic yards of ground slag, which resulted from XTRA Intermodal's actions.   Blue Tee has made repeated demands upon XTRA Intermodal to participate in or contribute to the costs of remediation but XTRA Intermodal has failed and refused to contribute.

Plaintiff Gold Fields paid the costs incurred by Blue Tee for remediation at the Site and seeks recovery pursuant to its subrogation rights under CERCLA, Illinois law, and contract law as it may sue in Blue Tee's name pursuant to their agreement.

As the motion for summary judgment is ripe, the Court turns to address the merits of the motion.

## II.   Facts[1]

American Zinc operated a smelter at the Site from 1916 to approximately 1953.   A byproduct of American Zinc's operations at the Site was vitrified slag.

From 1976 to 1979, X-L entered into a lease with American Zinc, then known as AZCON Corporation, for approximately 20 acres of the site.   In 1979, X-L purchased the Site from American Zinc.   With the purchase of the property, X-L also purchased "all of the Waelz clinker and other residues, materials, or metals located on the Site."   X-L purchased the slag at the Site to use a fill at the Site.   After the purchase of the Site, X-L expanded its trucking terminal operations at the Site.

During X-L's ownership or operation slag was redistributed on the surface of

---

1 These facts are taken from the briefs and are agreed to by the parties.

certain portions of the Site.   In 1994 and 1995, the EPA and the IEPA began to investigate the Site in responses to complaints from area residents about blowing dust.   The EPA and the IEPA concluded that XTRA spread slag.   In 1995, X-L transferred ownership of the Site to XTRA Intermodal.   XTRA Intermodal is the present owner of the Site.

In 2002, Blue Tee executed an AOC with the EPA, which required Blue Tee to conduct a Time Critical Removal Action at the Site.   The work was conducted primarily throughout 2002 and 2003.   In 2005, Blue Tee executed a second AOC with the EPA, which required a Remedial Investigation and Feasibility Study to be completed.   The Remedial Investigation was finished in 2009, and the Feasibility Study was completed in 2012.   The Record of Decision for the Site was issued in 2012, setting forth a remedy that is anticipated to cost more than $11.4 million.

The Site is a "facility" under CERCLA.   A release or a threat of release of hazardous substances has occurred at the Site. Through 2013, Blue Tee has incurred and Gold Fields has paid $4.8 million in response costs to remediate the Site.   These costs include amounts spent under the EPA's order and supervision and pursuant to a 2002 AOC and 2005 AOC.   These incurred costs were necessary for the remediation of the Site and consistent with the National Contingency Plan.

### III.   <u>Summary Judgment Standard</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To survive summary judgment, a nonmovant

must be able to show that a reasonable jury could return a verdict in his favor; if he is unable to "establish the existence of an element essential to [her] case, and on which he will bear the burden of proof at trial," *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), summary judgment must be granted. A bare contention that an issue of fact exists is insufficient to create a factual dispute, but the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.,* 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia v. Philip Morris Inc.,* 216 F.3d 596, 598–99 (7th Cir. 2000). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

## IV.   Analysis

Blue Tee and Gold Fields filed the motion for summary judgment as to XTRA Intermodal and X-L's contribution liability for Blue Tee and Gold Fields' past present and future costs to remediate the Site. Specifically, Blue Tee and Gold Fields are only seeking a finding as to CERCLA contribution liability, with the allocation of damages to be determined at a later proceeding.   Plaintiffs argue that

the prima facie case of contribution is satisfied.   In response, defendants acknowledge that XTRA Intermodal is the current owner and that X-L-Co. is the former owner that spread limited amounts of slag at the Site to use as fill material. Further, defendants acknowledge that they meet the definition of a potentially responsible party under CERCLA.   Despite this concession, defendants maintain that that they are entitled to a zero allocation as they did not generate any new contamination on the Site; rather defendants' mere movement of a limited amount of preexisting slag within the Site did not increase plaintiffs' response costs. Based on the following, the Court finds genuine issues of material fact exist and denies summary judgment.

CERCLA was passed in 1980 "to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination."   *Burlington Northern & Santa Fe Ry. Co., v. United States*, 556 U.S. 599, 602, 129 S.Ct. 1870 (2009)(internal citations omitted).   There are four classes of potentially responsible parties upon whom CERCLA imposes liability: (1) present owners and operators of facilities; (2) past owners or operators of the facility at the time of the disposal of a hazardous substance; (3) arrangers of the disposal of hazardous substances at the facility; and (4) certain transporters of hazardous substances.   42 U.S.C. § 9607(a). "CERCLA imposes a 'pay first, split-the-bill-later' regime, [and] … [a]nyone who paid [for cleanup] can then recover contribution from other responsible parties in accordance with that entity's equitable share of the costs."   *NCR Corp. v. George A.*

*Whiting Paper Co.*, 768 F.3d 682, 686 (7th Cir. 2014).

Contribution is a two-step analysis.   The first step is determining whether defendants are entities responsible under 42 U.S.C. § 9607; the second step is determining how to allocate the costs among the responsible parties. *Environmental Transportation Systems, Inc., v. ENSCO, Inc.*, 969 F.2d 503, 506 (7the Cir. 1992).   As to the first step, the record reflects that defendants do meet the definition of potentially responsible parties.   However, this finding alone does not equate to a finding of liability for contribution.   Thus, the question the Court must address is the proper allocation among the parties.

Under § 9613(f), "the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."   Courts have often relied on six factors.   *Id.* at 508.   These factors are: (1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (2) the amount of hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; (4) the degree of involvement by the parties in the generation, transportation, treatment, storage or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation to prevent any harm to the public health or the environment.   *Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 326 n. 4 (7th Cir. 1994).   The court should consider any other factors that are relevant and appropriate.   *Id.* at 326.

Primarily, the Court finds that there exists a question of material fact as to whether defendants spreading of slag across the Site actually caused plaintiffs' additional damage.   Defendants maintain that their actions caused none of plaintiffs' response costs; while plaintiffs maintain that X-L's grading and distribution of the slag for the use as grade and fill caused them response costs under CERCLA.   Further, there is conflicting expert testimony regarding this issue.   Defendants, through their experts, maintain that the limited spreading of slag by X-L did not increase response costs and plaintiffs maintain that it did. Summary judgment is not appropriate because plaintiffs have failed to show that no issue of material fact exists and that they are entitled to summary judgment.

## V.   <u>Conclusion</u>

Accordingly, the Court **DENIES** plaintiffs' Blue Tee Corp.'s and Gold Fields Mining, LLC's motion for summary judgment on contribution liability against defendants X-L-CO., Inc. and XTRA Intermodal, Inc. (Doc. 127).   The Court **SETS** this matter for final pretrial conference on February 18, 2016 at 1:30 p.m.

   **IT IS SO ORDERED.**

   Signed this 7th day of December, 2015.

Digitally signed by Judge David R. Herndon
Date: 2015.12.07 15:12:53 -06'00'

**United States District Court**